UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



| UNITED STATES OF AMERICA | ) | Criminal No. 19cr10369 |
|---|---|---|
| v. | ) | Violations: |
| BINTU TOURE, | ) | Count One: Wire Fraud; Aiding and Abetting (18 U.S.C. §§ 1343 and 2) |
| Defendant | ) | Count Two: Money Laundering Conspiracy (18 U.S.C. § 1956(h)) |
| | ) | Forfeiture Allegation: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |
| | ) | Money Laundering Forfeiture Allegation: (18 U.S.C. § 982(a)(1)) |

## INFORMATION

At all times relevant to this Information:

### General Allegations

1. Defendant Bintu Toure ("TOURE") was an individual who resided in Massachusetts.

2. Victim Company A was a privately-held company based in Houston, Texas, specializing in end-to-end supply chain solutions for selling and shipping food products to designated ports globally. Victim Company A's business included the purchase of frozen chicken parts from sellers located overseas.

3. Victim Company B was a privately-held company based in Houston, Texas, whose business included the purchase of frozen chicken parts from sellers located overseas.

1

Victim Company A and Victim Company B are collectively referred to herein as the "Victim Companies."

4. BRF S.A. ("BRF") was a publicly-held company organized under the laws of Brazil. Headquartered in Sao Paulo, Brazil, BRF was one of the largest food companies in the world, focusing on the production and sale of poultry, pork, and processed foods. BRF marketed several brands, including the "Sadia" brand of food products. Among other things, BRF's business included the selling and shipment of frozen chicken parts to customers. The domain for BRF's home page was "www.brf-global.com."

5. C. Vale – Cooperativa Agroindustrial Ltda. ("C. Vale") was an agroindustrial cooperative based in Palotina, Brazil. Among other things, C. Vale's business included the selling and shipment of frozen chicken parts to customers. The domain for C. Vale's home page was "www.cvale.com.br."

6. Yannick Minang ("Minang") was an individual who resided in Massachusetts. Minang recruited TOURE to open bank accounts in the District of Massachusetts, in furtherance of the scheme to defraud described below.

7. Cooperating Witness 1 ("CW-1") was an individual who resided in Massachusetts. TOURE recruited CW-1 to open bank accounts in the District of Massachusetts at Minang's direction, in furtherance of the scheme to defraud described below.

## Scheme to Defraud

8. Beginning in or about November 2018, and continuing through in or about May 2019, TOURE participated in a scheme and artifice to defraud and for obtaining money and property from the Victim Companies, and others, by fraudulently deceiving these victims into

wiring funds to various bank accounts opened by TOURE and CW-1 and under Minang's control.

9. The victims of the scheme, who believed that they were purchasing frozen chicken parts from the real BRF or C. Vale, were provided with fraudulent invoices from spoofed email accounts, *i.e.*, email accounts made to appear as if they were affiliated with the real BRF or C. Vale. These fraudulent invoices directed the victims to wire payment to bank accounts that the victims believed were controlled by the real BRF or C. Vale. In fact, at Minang's direction, these bank accounts were opened by TOURE and CW-1 in the names of BRF and C. Vale (or variations thereof).

10. After the victims wired the funds to these sham bank accounts, Minang directed TOURE and CW-1 (through TOURE) to withdraw the funds, often in amounts less than $10,000 and/or wire the funds to bank accounts located outside the United States.

11. In particular, as part of the scheme, TOURE opened at least three sham bank accounts: (i) an account at Santander Bank in the name "BRF Global SA" (the "Sant-0965 Account"); (ii) an account at TD Bank in the name "BRF Global SA" (the "TD-9777 Account"); and (iii) an account at TD Bank in the name "BRF Global SA" (the "TD-3199 Account"). TOURE provided Minang with the documentation for these accounts and the information to login and access these accounts online.

12. After receiving fraudulent invoices as described in paragraph 9, victims of the scheme wired funds to these sham accounts. TOURE withdrew proceeds of the fraud from these accounts and provided the funds to Minang, who would generally give TOURE a percentage of the funds to keep as a fee.

13. For instance, on or about March 25, 2019, Victim Company A received a fraudulent invoice for frozen chicken parts from an email address with the domain name "brf-globalfoods.com." This email was spoofed to appear as if it had come from the domain for the real BRF, which is "brf-global.com." The invoice directed Victim Company A to send payment in the amount of $283,500 to the TD-9777 Account.

14. Later that same day, Victim Company A received another email from an account with the domain name "brf-globalfoods.com," this time directing payment be sent to the TD-3199 Account instead.

15. On or about March 26, 2019, Victim Company A wired $85,050 to the TD-3199 Account, as the deposit for its order of frozen chicken parts.

16. On or about March 29, 2019, at Minang's direction, TOURE withdrew $15,000 from the TD-3199 Account at a TD Bank branch in Norwood, Massachusetts. On or about March 30, 2019, at Minang's direction, TOURE withdrew $21,000 from the TD-3199 Account at a TD Bank branch in Quincy, Massachusetts.

17. On or about April 1, 2019, at Minang's direction, TOURE transferred $34,453.06 from the TD-3199 Account to an account at a bank in Portugal in the name of an individual known to the government.

18. On or about April 3, 2019, Victim Company A wired $198,450 to the TD-3199 Account, representing the remaining balance for its order of frozen chicken parts.

19. On or about April 5, 2019, at Minang's direction, TOURE transferred $119,970 via two separate wire transfers from the TD-3199 Account to accounts at banks in Spain.

20. Victim Company A never received the frozen chicken parts it ordered and for which it paid.

21. As part of the scheme, at Minang and TOURE's direction, CW-1 opened at least two bank accounts: (i) an account at Bank of America in the name "Sadia ----- BRF SA"[1] (the "BOA-2967 Account") and (ii) an account at Santander Bank in the name "CVale SA" (the "Sant-6739 Account) (collectively, with the Sant-0965 Account, the TD-9777 Account, the TD-3199 Account, and the BOA-2967 Account, the "Fraudulent Accounts").

22. After receiving fraudulent invoices as described in paragraph 25 below, victims of the scheme wired funds to the BOA-2967 Account and the Sant-6739 Account. At Minang's instruction, TOURE directed CW-1 to withdraw proceeds of the fraud from these accounts and to provide the funds to TOURE, who then provided the funds to Minang. TOURE generally gave CW-1 a percentage of the funds to keep as a fee.

23. At Minang's instruction, TOURE also directed CW-1 to wire transfer funds from these accounts to bank accounts located outside the United States—including to some of the same bank accounts that received funds from the TD-3199 Account.

24. For instance, on or about January 29, 2019, Victim Company B received an email with a catalog for frozen chicken parts from the email address "export@c-vale.com." This email was spoofed to appear as if it had come from the domain for the real C. Vale, which is "cvale.com.br."

---

[1] CW-1's name was included in the name of this account, but has been omitted here.

25. On or about February 6, 2019, Victim Company B received an email from the same spoofed email address ("export@c-vale.com") with a fraudulent invoice for frozen chicken parts to be delivered to Chile, directing payment in the amount of $218,700 to the Sant-6739 Account. The fraudulent invoice listed "BRF S.A. – SADIA" rather than C. Vale as the "Seller" for the shipment. Victim Company B responded to this email to point out that the quantity and the price quoted was incorrect, and in response received a revised, though still fraudulent, invoice.

26. Victim Company B then advised that the transaction would be delayed until after April 2, 2019. An updated invoice directed Victim Company B to pay a 30% deposit of $8,580 to the Sant-0965 Account, an account TOURE had opened in the name "BRF Global SA."

27. On or about April 10, 2019, Victim Company B received an email from export@c-vale.com providing updated payment instructions and directing payment of the 30% deposit be sent to the Sant-6739 Account.

28. On or about April 12, 2019, Victim Company B wired $8,580 to the Sant-6739 Account, as the deposit for an order of frozen chicken parts.

29. On or about April 15, 2019, CW-1 withdrew $8,500 from the Sant-6739 Account and provided the funds to TOURE.

30. On or about April 18, 2019, Victim Company B wired $8,062.50 to the Sant-6739 Account, as the deposit for a second order of frozen chicken parts.

31. On or about April 22, 2019, Victim Company B wired $38,832.50 to the Sant-6739 Account, representing the remaining balance for its orders of frozen chicken parts.

32. On or about April 23, 2019, CW-1 withdrew $8,000 from the Sant-6739 Account and provided the funds to TOURE.

33. On or about April 24, 2019, CW-1 withdrew $6,500 from the Sant-6739 Account and provided the funds to TOURE.

34. On or about April 24, 2019, at the direction of Minang and TOURE, CW-1 transferred $24,000 from the Sant-6739 Account to an account at a bank in Portugal.

35. Victim Company B never received the frozen chicken parts it ordered and for which it paid.

36. Over the course of the scheme, victims wired more than $600,000 to sham bank accounts controlled by TOURE, CW-1, and Minang.

## COUNT ONE
### Wire Fraud; Aiding and Abetting
### (18 U.S.C. §§ 1343 and 2)

The United States Attorney charges:

37. The United States Attorney re-alleges and incorporates by reference paragraphs 1-36 of this Information.

38. On or about the date set forth below, in the District of Massachusetts, and elsewhere, the defendant,

### BINTU TOURE,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Approximate Date | Description |
|---|---|
| 4/3/19 | $198,450 wire transfer from Victim Company A in Texas to the TD-3199 Account in Massachusetts. |

All in violation of Title 18, United State Code, Sections 1343 and 2.

## COUNT TWO
Money Laundering Conspiracy
(18 U.S.C. § 1956(h))

The United States Attorney further charges:

39. The United States Attorney re-alleges and incorporates by reference paragraphs 1-36 of this Information.

40. On or about November 2018 through May 2019, in the District of Massachusetts, and elsewhere, the defendant,

### BINTU TOURE,

conspired with Minang, CW-1, and others known and unknown to the United States Attorney to:

(a) conduct and attempt to conduct financial transactions, to wit, withdrawals and wire transfers from the Fraudulent Accounts, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343, and knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(b) conduct and attempt to conduct financial transactions, to wit, withdrawals from the Fraudulent Accounts, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that

       is, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the transactions were designed in whole and in part to avoid a transaction reporting requirement under State and Federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii);

(c)    transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

(d)    knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, that is, funds in the Fraudulent Accounts, where such property was derived from specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

41.   Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Count One of this Information, the defendant,

**BINTU TOURE,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

42.   If any of the property described in Paragraph 41, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the Court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 41 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
## (18 U.S.C. § 982(a)(1))

The United States Attorney further alleges:

43. Upon conviction of the offense in violation of Title 18, United States Code, Sections 1956(h), set forth in Count Two of this Information, the defendant,

### BINTU TOURE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

    a. $629,118, to be entered in the form of a forfeiture money judgment.

44. If any of the property described in Paragraph 43, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 43 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

                            Respectfully submitted,

                            ANDREW E. LELLING
                            United States Attorney

By:   /s/ William B. Brady
                            William B. Brady
                            Jordi de Llano
                            Assistant United States Attorneys

Dated: September 27, 2019